| | |
|---|---|
| JOEVELYN ROOP, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment [Doc. 10] and Defendant's Motion for Summary Judgment [Doc. 13].

**I.  PROCEDURAL HISTORY**

On September 18, 2015, the Plaintiff's husband, Rickey Allen Roop ("Claimant"), now deceased, filed an application for a period of disability benefits under Title II of the Social Security Act (the "Act"), initially alleging an onset date of December 31, 2008. [Transcript ("T.") at 13–14]. Claimant's wife, JoEvelyn Roop ("Plaintiff"), is now pursuing this action. Claimant's disability claims were initially denied on January 27, 2016, and again denied upon reconsideration on March 11, 2016.  [Id. at 13].  On Claimant's request,

a hearing was held on February 26, 2018, before an Administrative Law Judge ("ALJ"). [Id.]. On March 21, 2018, the ALJ issued a written decision denying Claimant benefits. [Id. at 25]. On February 4, 2018, the Appeals Council denied Claimant's request for review. [Id. at 1–5]. Claimant appealed to this Court and the Honorable Judge Max O. Cogburn Jr. remanded the matter to the ALJ for further proceedings. [Id. at 396–406].

On March 23, 2022, another hearing was held before an ALJ. [Id. at 306]. Prior to this hearing, Claimant amended his alleged onset date to March 30, 2014. [Id.]. On May 2, 2022, the ALJ issued a decision partially favorable to Claimant, finding that Claimant, while not disabled within the meaning of the Act prior to January 29, 2020, became disabled on that date. [Id. at 305–18]. As such, the ALJ awarded Claimant benefits for the period after he became disabled within the meaning of the Act. [Id.]. On May 17, 2022, Claimant died and his wife, Plaintiff, filed Written Exceptions to the ALJ's decision with the Appeals Council. [See Doc. 11 at 1–2]. The Appeals Council denied Plaintiff's request for review on August 29, 2022, thereby making the ALJ's decision the final of the Commissioner.[1] [T. at 295].

---

[1] In its denial of Plaintiff's request for review, the Appeals Council responds to Plaintiff's Written Exceptions by supplementing the analysis in the ALJ's decision. However, in denying Plaintiff's requested review, the Council explicitly stated that the ALJ's decision is the final decision of the Commissioner. As such, this Court's review is limited to the analysis found in the ALJ's decision and does not incorporate the Council's *post-hoc* supplementation of the ALJ's decision.

Plaintiff has exhausted all available administrative remedies and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal

quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established, and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education, or

5

work experience.  Id.  If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions.  Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work.  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the claimant can still perform his or her past work, then the claimant is not disabled.  Id.  Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner.  At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy.  Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the

application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

On remand, at step one, the ALJ found that Claimant had not engaged in substantial gainful activity from his amended onset date, March 30, 2014. [T. at 309]. At step two, the ALJ found that from his alleged onset date Claimant had suffered from severe impairments, including type I diabetes, back arthralgia, obesity, and neuropathy. [Id.]. Additionally, beginning on January 29, 2020, the ALJ found that Claimant began suffering from severe adenocarcinoma of the esophagus with metastatic disease and hypothyroidism. [Id.].

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the Listings. [Id. at 311]. The ALJ then determined that between his amended onset date of March 30, 2014, and January 29, 2020, the Claimant "had the residual functional capacity (RFC) to perform medium work except that he could have occasionally climbed ropes, ladders and scaffolds; and he could have occasionally used foot pedals (20 CFR 404.1567 and 416.967)." [Id.]. However, after January 29, 2020, the date on which Claimant was diagnosed with esophageal cancer, the ALJ found that Claimant had only "the residual

functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that he can never climb; the claimant can have no exposure to hazards; and he can occasionally use foot pedals." [Id. at 315].

At step four, the ALJ identified Claimant's past relevant work as a machinist. [Id. at 316]. The ALJ then found, based upon the testimony of a Vocational Expert ("VE"), that Claimant's prior work did not require the performance of work-related activities precluded by Claimant's RFC during the period between March 30, 2014, and January 29, 2020, but did require performance of work-related activities precluded by Claimant's RFC after January 29, 2020. [Id. at 316–17].

The ALJ then proceeded to make alternative findings at step five, finding, based on the VE's testimony, that, considering Claimant's age, education, work experience, and RFC prior to January 29, 2020, that Claimant could have performed other jobs that existed in significant numbers in the national economy, including: laundry checker, hand packager, and patient transporter. [Id.]. The ALJ thus concluded that Claimant was not "disabled" as defined by the Act from March 30, 2014, through January 29, 2020. However, the ALJ also concluded that considering Claimant's age, education, work experience, and RFC after January 29, 2020, there were no

jobs that existed in the national economy in significant numbers that Claimant could have performed after January 29, 2020. [Id. at 317].

## V. DISCUSSION[2]

Plaintiff presents three assignments of error and numerous arguments therein for reversing the ALJ's decision. As one of her assignments of error, Plaintiff argues that the ALJ erred by finding Claimant's prostate cancer "non-severe." Plaintiff further argues in a separate assignment of error that the ALJ erred by failing to conduct any "function-by-function" analysis and by failing to account for Claimant's prostate cancer in formulating his RFC. [Doc. 11 at 6–8, 11–18, 23–25].

### A. Severity of Claimant's Prostate Cancer

The ALJ's determination as to whether an impairment is severe is a threshold determination. See C.F.R. § 404.1520(c). An impairment is considered non-severe "only if it is a *slight* abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal citation and quotation omitted) (emphasis in original). Claimant has the

---

[2] Rather than set forth a separate summary of the facts in this case, this Court has incorporated the relevant facts into its legal analysis.

burden of demonstrating the severity of his impairments. See Pass, 65 F.3d at 1203.

Here, in dismissing Claimant's prostate cancer as non-severe, the ALJ provided only that "[t]he record does not show active treatment for the condition, and it does not show significant symptoms of the disease." [T. at 310]. The ALJ, however, failed to address evidence in the record indicating that Claimant's prostate cancer was severe. Specifically, Claimant stated in the hearing before the ALJ, as well as to his doctors, that he suffered from urinary frequency, urgency, and nocturia, resulting in at least two to three incidents per month of the Claimant urinating on himself because he was unable to reach his bathroom, which was only twenty feet away. [T. 373, 602]. Further, Claimant also stated in the hearing that these symptoms, at times, dissuaded him from leaving home. [Id. at 373]. Nothing in the ALJ's decision suggests that these symptoms, which could be attributed to Claimant's prostate cancer, were considered, nor does the decision explain how the ALJ reconciled this evidence with her conclusion.

Additionally, the ALJ relies upon Claimant's decision to actively monitor has cancer, rather than seeking active treatment, in concluding his prostate cancer was non-severe. This, however, is inconsistent with the Social Security Administration's own ruling which provides:

10

> <u>We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment</u> consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:
>
> - An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms.
>
> - An individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau.
>
> - An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms.
>
> - <u>An individual may not be able to afford treatment and may not have access to free or low-cost medical services.</u>
>
> - A medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual.
>
> - An individual's symptoms may not be severe enough to prompt him or her to seek treatment, or the symptoms may be relieved with over the counter medications.

- An individual's religious beliefs may prohibit prescribed treatment.

- Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.

- Due to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation), an individual may not be aware that he or she has a disorder that requires treatment.

- A child may disregard the level and frequency of treatment needed to maintain or improve functioning because it interferes with his or her participation in activities typical of other children his or her age without impairments.

SSR 16-3p (emphasis added).

Here, the ALJ failed to determine why Claimant declined to seek treatment for his prostate cancer. Therefore this factor is insufficient to support the ALJ's finding that the cancer was non-severe. As Ruling 16-3p points out, individuals decline to seek treatment for a number of good reasons, including the costs associated with treatment, harmful side effects, and risks. Pursuant to the Administration's own Ruling, the ALJ is required to "consider and address reasons for not pursing treatment that are pertinent to an individual's case." SSR 16-3p. Particularly relevant here, some

12

evidence in the record could support a finding that the costs associated with seeking treatment were a factor in Claimant's decision not to obtain treatment for his prostate cancer.[3] Similarly, the record contains evidence that treatment providers discussed the risks and benefits associated with active treatment, which could further help explain Claimant's decision not to seek active treatment. [T. at 604]. Because the ALJ did not explicitly consider or address *why* Claimant declined treatment, the Court cannot determine whether the ALJ even considered the reasons set forth in SSR 16-3p before coming to her conclusion that Claimant's prostate cancer was non-severe.

## B. Function-by-Function Analysis

Social Security Ruling 96-8p explains how adjudicators should assess a claimant's RFC, instructing that the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[4] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding

---

[3] Specifically, there is evidence in the record that Claimant was without insurance at times and that during these periods, Claimant, a type-1 diabetic, was "unable to afford diabetic supplies[,]" so he was left unable to monitor his blood sugar. [T. at 277, 286].

[4] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and

13

that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

In formulating the RFC, an ALJ is required to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. More specifically, rule 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

[Id.]. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." [Id.].

Here, the ALJ's decision never explains how she accounted for Claimant's prostate cancer in formulating his RFC. Indeed, aside from

---

work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

14

stating that this condition was non-severe at step two, the ALJ did not mention this condition in her decision. As noted above, the Social Security Administration's own regulations require an ALJ to consider every impairment asserted by a claimant, even those that an ALJ concludes are non-severe, in formulating an RFC. See SSR 96-8p. As there is no indication in the ALJ's decision that she took Claimant's prostate cancer into account in formulating Claimant's RFC, this Court cannot conclude that the ALJ built the necessary accurate and logical bridge between the evidence Plaintiff presented about Claimant's impairments and his RFC. See Monroe, 826 F.3d at 189.

Additionally, prior to January 29, 2020, the ALJ concluded that "claimant had the residual functional capacity to perform medium work except that he could have occasionally climbed ropes, ladders and scaffolds; and he could have occasionally used foot pedals (20 CFR 404.1567 and 416.967)." [T. at 311]. However, in formulating the RFC, the ALJ failed to conduct any function-by-function analysis of Claimant's physical health limitations and work-related abilities. [Id. at 311–14].

The ALJ describes in general terms the evidence of record, but it is unclear as to what evidence is specifically referred to and why the evidence supports her conclusions. Further, despite Claimant's RFC reflecting

15

Case 5:22-cv-00115-MR   Document 15   Filed 09/21/23   Page 15 of 19

multiple limitations that appear related to his symptoms associated with severe impairments, including diabetes, back arthralgia, and neuropathy, the ALJ fails to provide any discussion of these limitations. The ALJ never explains how she concluded—based on the evidence of record—that Claimant could have performed the tasks required of medium work, nor did the ALJ explain how the additional physical limitations stated in his RFC account for Claimant's severe impairments. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [Plaintiff] could perform 'medium work' and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded— *based on this evidence*—that [Plaintiff] could actually perform the tasks required by 'medium work,' such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours."). Moreover, the ALJ's assessment of Claimant's RFC is insufficient to satisfy the requirement of Social Security Ruling 96-8p that the ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

SSR 96-8p. Therefore, the ALJ failed to build an "accurate and logical bridge" from the evidence of record to the RFC conclusions.[5]

A reviewing court cannot be "left to guess about how the ALJ arrived at her conclusions on [a claimant's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports [her] decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills, 2017 WL 957542, at *4 (citation omitted).

---

[5] Compounding the failure to adequately discuss and analyze the evidence of record in assessing Claimant's physical impairments, the ALJ's weighing of the medical opinion evidence in this case is inconsistent. Specifically, the ALJ noted that she gave the opinions of the State Agency consultants significant weight, seemingly because these opinions accord with the findings of Dr. Duszlak. [T. at 314]. However, the ALJ gave the opinion of Dr. Duszlak itself little weight, noting that while it was well supported by her notes, it was six years old. [Id.]. The ALJ fails to address, however, that the opinions of the State Agency consultants, which she gave substantial weight, are only one and three months, respectively, more recent than that of Dr. Duszlak, nor does she explain how she accounted for their similar vintage in deciding to give these opinions significant weight. The ALJ offers no further explanation for why she affords the opinions of the State Agency consultants significant weight, while discounting the opinion of Dr. Duszlak.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ should explain how she considered the evidence of record in concluding Claimant's prostate cancer was non-severe, as well as conduct a proper function-by-function analysis of Claimant's impairments, narratively discussing all the relevant evidence, and specifically explaining how she reconciled that evidence with her conclusions.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED** and Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 20, 2023

Martin Reidinger
Chief United States District Judge